| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>Caption in Compliance with D.N.J. LBR 9004-2(c)<br>**WASSERMAN, JURISTA & STOLZ, P.C.**<br>110 Allen Road, Suite 304<br>Basking Ridge, New Jersey 07920<br>Phone: (973) 467-2700<br>*Local Counsel for Bath Iron Work Corporation*<br>**DANIEL M. STOLZ, ESQ.**<br>**DONALD W. CLARKE, ESQ.**<br><br>**JENNER & BLOCK**<br>353 N. Clark Street<br>Chicago, IL 60654-3456<br>Phone: (312) 222-9350<br>*Counsel for Bath Iron Work Corporation*<br>**WADE A. THOMSON, ESQ.**<br>**CATHERINE L. STEEGE, ESQ.**<br>**MICHAEL A. DOORNWEERD, ESQ.** | |
| In Re:<br><br>**CONGOLEUM CORPORATION[1],**<br><br>Debtor. | Chapter 11<br>Case No. 20-18488 (MBK)<br><br>Honorable Michael B. Kaplan |
| **BATH IRON WORKS CORPORATION**,<br><br>Plaintiff,<br><br>v.<br><br>**CONGOLEUM CORPORATION**,<br><br>Defendant. | Adv. Pro. No.: 20-01439 MBK)<br><br>Honorable Michael B. Kaplan |

**BATH IRON WORKS CORPORATION'S OPPOSITION TO DVL, INC. AND DVL KEARNY HOLDINGS, LLC MOTION TO INTERVENE IN THE ADVERSARY <u>PROCEEDING INSTITUTED BY BATH IRON WORKS CORPORATION</u>**

---

[1] The last four digits of the Debtor's federal tax identification number are 8678. The Debtor's corporate headquarters is located at 3500 Quakerbridge Road, Mercerville, New Jersey 08619.

Bath Iron Works Corporation's ("**BIW**") respectfully submits this Opposition to DVL, Inc. and DVL Kearny Holdings, LLC's (collectively, "**DVL**") Motion (the "**Motion**") to Intervene in the Adversary Proceeding Between BIW and Congoleum Corporation ("**Congoleum**" or "**Debtor**").

## INTRODUCTION

1. DVL's Motion fails to satisfy any of Rule 24's intervention requirements and should be denied. For starters, all agree, including DVL, that a motion to intervene must be timely. (Motion ¶33.) DVL's Motion does not fit that bill. DVL waited to file its Motion until *after* the two parties to this case had settled it. As BIW and the Debtor advised the Court at an October 13 hearing at which DVL was present, they have settled their long-running dispute over the meaning of the Court's 2010 order confirming a plan of reorganization in Congoleum's first bankruptcy case (the "**2010 Confirmation Order**"). If approved, this settlement will net unsecured creditors $1 million, release a $14.8 million claim, and put an end to a hotly contested dispute that has embroiled Congoleum and BIW for three years by finally deciding the meaning of the 2010 Confirmation Order. Because it is a highly favorable settlement for the bankruptcy estate, the Official Committee of Unsecured Creditors (the "**UCC**") has asked to join it.

2. Eight days after the settlement was announced, DVL moved to intervene for the *sole* purpose of derailing the settlement and moving this dispute to the district court. Filed after the parties "submitted [an] agreement for Court approval," DVL's motion "is not timely under any standard." *In re Chalk Line Mfg., Inc.*, 184 B.R. 828, 832 (Bankr. N.D. Ala. 1995). DVL also has not established any valid basis on which to intervene. It argues (incorrectly) that it is not a creditor of Congoleum and that alone dooms its Motion, for if DVL were correct, DVL would have no right to intervene under section 1109(b) of the Bankruptcy Code.

3. DVL further justifies its belated Motion by arguing that its proposed withdrawal motion will prevent BIW and Congoleum from forum shopping. Not so. The district court has never reached the merits of what the 2010 Congoleum Order means, deferring that issue until the close of discovery. *See DVL, Inc. v. Congoleum Corp.*, 2018 U.S. Dist. LEXIS 143437, **8, 15 (D. N.J. 2018). More importantly, now that Congoleum's second bankruptcy has intervened, this Court, which is the court presiding over Congoleum's chapter 11 case and which has "exclusive jurisdiction" over Congoleum's property, *is* the court that has jurisdiction to decide whether the proposed settlement is in the bankruptcy estate's best interests. 28 U.S.C. §1334(d). This Court also is in the best position to exercise its "historic and time-honored jurisdiction to interpret and enforce its own prior orders" particularly given the 2010 Confirmation Order's impact on many issues in this pending chapter 11 case. *In re Christ Hosp.*, 502 B.R. 158, 182 (Bankr. D.N.J. 2013), *aff'd*, No. CIV.A. 14-472 ES, 2014 WL 4613316 (D.N.J. Sept. 12, 2014).

4. Indeed, if anyone is forum shopping here it is DVL. This adversary proceeding has been pending for nearly three months and DVL sat on its hands doing nothing. Now that this adversary proceeding is settled, DVL wants to change forums. The Court should exercise its considerable discretion over intervention motions to deny or defer DVL's Motion pending a hearing on the settlement motion. This in no way prejudices DVL as its "interest in [the] adversary proceeding is [] safeguarded by . . . [its] right to notice of any proposed settlement" and its ability to object. *See In re Infiltrator Sys., Inc.*, No. 3:98CV1534 RNC, 1998 WL 1574648, at *4-5 (D. Conn. Nov. 6, 1998). DVL should exercise that right if it disagrees with the settlement. But what DVL should not be allowed to intervene with the goal of preventing this Court from considering a highly favorable settlement in the first instance. DVL's Motion should be denied.

## BACKGROUND

5. On August 6, 2020, BIW filed a one-count adversary complaint against Congoleum seeking a declaration that the confirmation order entered in Congoleum's first chapter 11 case relieved BIW of *all* "responsibility for the liabilities of the Congoleum Flooring Business" including environmental liabilities. (Adv. Dkt. 1 at 24.) BIW sought this declaration because, despite the seemingly straightforward nature of that finding, since the finding was entered, Congoleum and others have argued that the finding did not apply to environmental liabilities.

6. Following the filing of the adversary proceeding, BIW and Congoleum resolved the dispute. Congoleum announced the proposed settlement at its October 13, 2020 hearing on its sale motion and read its terms in to the record. In reliance upon the proposed settlement, BIW withdrew its objections to the sale. DVL was present at the sale hearing. BIW, Congoleum, and the UCC, which has since asked to join the settlement agreement, are editing the agreement and motion and anticipate it will be filed in the next few days.

7. On October 21, 2020—eight days after the parties announced a settlement and almost three months after BIW filed its adversary complaint—DVL filed its Motion. DVL seeks permission under section 1109(b) of the Bankruptcy Code and under Rules 2018 and 7024 of the Federal Rules of Bankruptcy Procedure to intervene in this proceeding. DVL states in its Motion that it "does not seek a right to payment from the Debtor or its chapter 11 estate" (Motion ¶1), but seeks to intervene "for the sole purpose" of filing a motion to withdraw the reference of this adversary proceeding (Motion ¶2).

# ARGUMENT

8. DVL's Motion to intervene should be denied. As an initial matter, DVL's Motion, coming after the parties to this adversary proceeding have settled it, is untimely. Because timeliness is an absolute prerequisite to intervention under Rule 24, the Motion must be denied.

9. But even if its Motion were timely, DVL has not satisfied the standards for intervention under Rule 24(a) or (b). By claiming it is not a "creditor," DVL has defeated its argument that it has an absolute right to intervene under 11 U.S.C. §1109(b). Further, courts routinely deny intervention requests where the proposed intervener's course of action, like DVL's here, are likely to be futile. DVL's reasons for intervening—so that it can engage in forum shopping and move the hearing on settlement to the district court—are not well grounded and likely to be denied. And importantly, DVL's interests will not be prejudiced if its Motion is denied as it may oppose the parties' settlement when it is presented to the proper court, which is this Court, for approval.

**I.     As An Initial Matter, DVL Does Not Have A Right To Intervene Under Rule 24 Because Its Motion Is Untimely.**

10. As DVL acknowledges in its Motion (*see* Motion ¶34), a request to intervene under *any* section of Rule 24 must be timely. FED. R. CIV. P. 24(a) (requiring a "timely motion" for an intervention of right); FED. R. CIV. P. 24(b) (requiring a "timely motion" for permissive intervention). Courts uniformly hold that intervention in a matter that the parties already have settled is untimely. *See Appeal of Cont'l Steel Corp.*, 968 F.2d 1218 (7th Cir. 1992) (collecting cases). Thus, a party's motion to intervene in an adversary proceeding "[o]nly after the parties submitted [an] agreement for Court approval . . . is not timely under any standard." *Chalk Line Mfg.*, 184 B.R. at 832; *accord Summit Acad. v. Twp. of Summit*, 66 F. App'x 417, 418 (3d Cir. 2003) (affirming denial of application to intervene because it was not timely, explaining "[t]he

5

case was over, the action was settled"). This is especially so when the party could have intervened long before, but chose not to. *See In re Terex Corp.*, 53 B.R. 616, 621 (Bankr. N.D. Ohio 1985). In *Terex*, the court denied intervention "[w]here a prospective intervenor remain[ed] quiescent for over forty days after it knew its interest would be adversely affected," holding that the motion was untimely. *Id.*

11. Here, DVL has waited more than forty days; it waited nearly three months. And it moved to intervene only *after* the parties had reached a settlement. DVL's Motion is "not timely under any standard" and it has foreclosed its ability to intervene under *any* section of Rule 24. *See Chalk Line Mfg.*, 184 B.R. at 832.

## II. DVL Cannot Satisfy Rule 24(a)'s Standards.

12. But even if DVL's Motion was timely, DVL cannot satisfy the standards for intervention under Rule 24(a). Rule 24(a) allows an entity that has made a "timely" motion to intervene as of right if: (1) a federal statute provides an unconditional right to intervene; or (2) the putative intervenor "claims an interest relating to the property or transaction that is the subject of the action and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Bankr. P. 7024 incorporating Fed. R. Civ. P. 24(a). DVL contends its meets both requirements. It does not.

### A. DVL Does Not Have An Unconditional Right To Intervene Under A Federal Statute.

13. DVL argues first that section 1109(b) of the Bankruptcy Code gives it an "unconditional statutory right to intervene." (Motion ¶30.) Section 1109(b) provides that "[a] party in interest, including . . . a creditor . . . may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. §1109(b). "In general, a 'party in interest' under section

1109(b) is any person with a direct financial stake in the outcome of the case . . . ." 7 Collier on Bankruptcy ¶ 1109.02 (16th ed. 2020). Section 1109(b) gives such a party the right to intervene where its legally protected interest is at stake. *See In re Stone & Webster, Inc.*, 373 B.R. 353, 361 (Bankr. D. Del. 2007), *aff'd*, No. 00-02142(PJW), 2008 WL 4890896 (D. Del. Nov. 12, 2008); *accord Harris v. Pernsley*, 820 F.2d 592, 599 (3d Cir. 1987) (party had "sufficient interest to intervene" only "as to certain issues in an action without having an interest in the litigation as a whole").

14.    But here DVL's own strategic argument defeats the very basis on which it seeks to intervene. Apparently hoping to evade the res judicata and issue preclusive effects of any order this Court enters, DVL states in the first paragraph of its Motion that it "has not filed a proof of claim" and "does not seek a right to payment from the Debtor or its chapter 11 estate." (Motion ¶1.) But the very thing DVL claims it is *not* is the exact definition of a "creditor" under the Bankruptcy Code. Section 101 defines a "creditor" as "an entity that has a claim against the debtor," and it defines a "claim" as a "right to payment." 11 U.S.C. §§101(5), (10). If, as DVL contends, it is not a creditor, there is "no jurisdictional basis that would allow [DVL] to intervene" under section 1109(b) as it "has not filed a proof of claim and is otherwise not a creditor of the Debtor's estate." *In re Minor*, 531 B.R. 564, 569 & n.6 (Bankr. E.D. Pa. 2015), *aff'd*, 579 B.R. 333 (E.D. Pa. 2016). DVL therefore is not "a 'party in interest' within the meaning of § 1109." *Id.* at 569 n.6; *accord In re C.P. Hall Co.*, 750 F.3d 659, 661 (7th Cir. 2014) (holding that "the list of persons having a right to appear and be heard in a bankruptcy case" did not include the movant because "[i]t [was] not a creditor"); *In re MarketXT Holdings Corp.*, 336 B.R. 67, 73 (Bankr. S.D.N.Y. 2006) (movant was not a "party in interest" under section 1109(b) because, "as a consequence of its failure to file a proof of claim, . . . it [was] not a creditor"). In short, DVL's

strategic decision to claim it is not a creditor defeats its argument that it has an unconditional statutory right to intervene under section 1109(b).

15. It is important to note, however, that DVL is wrong on this point. As DVL admits in its Motion, it has sued Congoleum for $19 million in damages. (Motion ¶¶4, 6.) The fact that DVL's claim against Congoleum is unliquidated and disputed or that DVL has decided not to file a proof of claim does not change its status as the holder of a claim. 11 U.S.C. §101(5), (10). So while DVL's misguided, and likely strategic argument, provides this Court with a basis to deny its untimely Motion, the Court should reject DVL's attempts to insulate itself from the impact of this Court's orders. DVL is a creditor, whether it chooses to pursue its claim or not, and it is bound by any orders this Court enters.

16. In any event, whether DVL is or is not a creditor does not save its intervention request because DVL does not hold the sort of interest in *this proceeding* that gives it the right to intervene under section 1109(b). Section 1109(b) does not give a party in interest an unfettered right to participate in any proceeding it chooses, but only those proceedings in which the movant's legally protected interests are at stake. *See Stone & Webster*, 373 B.R. at 361. Thus, where a party seeks to intervene solely to take an action it has no right to take, the court should deny the motion to intervene as futile. *See In re Am. White Cross, Inc.*, 269 B.R. 555, 559-60 (D. Del. 2001).

17. DVL's Motion here is futile because the withdrawal motion DVL seeks to file is meritless on its face. "DVL seeks to intervene solely so that it might then move the district court . . . to withdraw the reference of [this] adversary proceeding . . . ." (Motion ¶2.) But the sole issue in this adversary proceeding—the interpretation of a prior order in Congoleum's previous bankruptcy case—is at the very heart of a bankruptcy court's jurisdiction and belongs in this forum. Bankruptcy courts have "historic and time-honored jurisdiction to interpret and enforce [their] own

8

prior orders." *Christ Hosp.*, 502 B.R. at 182; *accord Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) (holding that the bankruptcy court retained jurisdiction more than a decade after entry of orders confirming a Chapter 11 plan to interpret and enforce its own prior orders); *In re Shenango Grp. Inc.*, 501 F.3d 338, 348 (3d Cir. 2007) (deferring to the bankruptcy court's interpretation of its prior orders).

18.  *In re Chateaugay Corp.*, 193 B.R. 669 (S.D.N.Y. 1996), is instructive. There, a movant sought to withdraw the reference of a proceeding to determine whether a party's liability under CERCLA had been extinguished in a prior bankruptcy. *Id*. at 671-72. The movant argued that the reference should be withdrawn to allow the issue to be decided in an already-pending action in a federal district court involving those same environmental liabilities, but the district court disagreed. *Id*. The court noted that "accrual of the EPA's CERCLA claims against bankrupt parties is determined by bankruptcy law, and does not require interpretation of the substantive provisions of CERCLA." *Id.* at 673. Even the ancillary issues to be decided in the proceeding, "although not dependent on the Bankruptcy Code," still should be decided by the bankruptcy court because they involved the bankruptcy court's interpretation and review of the effects of its own prior orders. *Id.* at 674. The court further held that the existence of the pending CERCLA case in a federal district court "d[id] not strengthen the motion to withdraw" because a bankruptcy court ruling would "merely instruct[]" the district court how to proceed based on the effects of the prior bankruptcy court orders. *Id.* at 677-78.

19.  So too here. DVL seeks to withdraw this Court's ability to exercise its "historic and time-honored jurisdiction" to enforce a prior order in a bankruptcy case. *See Christ Hosp.*, 502 B.R. at 182. It does not matter that the issue underlying the prior order was CERCLA liability— the task before the Court in this proceeding is simply to interpret that prior bankruptcy order which

is squarely within this Court's jurisdiction. *See Chateaugay*, 193 B.R. at 673. Nor does it matter that there already is an action pending in the district court; the Court's ruling here would "merely instruct[]" the district court how to proceed based on the proper interpretation of the prior order. *Id.* at 677-78. Thus, prevailing on its Motion would be a pyrrhic victory for DVL because its underlying withdrawal motion is without merit. The Court need not indulge such a pointless exercise and should instead deny DVL's request to intervene under Rule 24(a)(1) as futile. *See Am. White Cross*, 269 B.R. at 559-60.

**B. DVL Does Not Have A Right To Intervene Under Rule 24(a)(2).**

20. For many of the same reasons, DVL's Motion also does not meet the standard for intervention as of right under Rule 24(a)(2). DVL cannot show that it has "an interest relating to the property or transaction that is the subject of this action, and is so situated that disposing of the action may as a practical matter impair or impede [its] ability to protect its interest," as required under Rule 24(a)(2). *See* FED. R. CIV. P. 24(a)(2). Most importantly, as discussed above, DVL seeks to intervene solely to file a withdrawal motion that has no merit.

21. Beyond that, DVL cannot possibly show that intervention in this proceeding is necessary to avoid impairment of any interest because *the parties have settled this matter*. Thus, if DVL is concerned about the settlement reached by the parties, it can object when that motion is presented, and does not need to insert itself in this proceeding. A party's "interest in [an] adversary proceeding is . . . safeguarded by inherent protections contained in the Bankruptcy Code, such as a creditor's right to notice of any proposed settlement." *Infiltrator Sys.*, 1998 WL 1574648, at *4 (citation omitted). "Creditors are thereby afforded the opportunity to review the compromise and settlement and to object to it if it does not adequately protect their interests." *Id.* (internal citation omitted).Therefore, DVL's rights will not be affected if its Motion is denied because DVL retains

the ability to object to the parties' proposed settlement. *See id.* Accordingly, DVL cannot meet the standard for intervention as of right under Rule 24(a)(2).

### III. DVL Should Not Be Permitted To Intervene Under Rule 24(b).

22. DVL's Motion also does not meet the standard for permissive intervention under Rule 24(b). Once again, the untimeliness of DVL's attempt to intervene in a proceeding that the parties already have settled is fatal to its Motion. *See Chalk Line Mfg.*, 184 B.R. at 832. And, once again, DVL's request under Rule 24(b) is doomed by the fact that it seeks to intervene solely to file a futile withdrawal motion. *Am. White Cross*, 269 B.R. at 559-60.

23. DVL's request to intervene under Rule 24(b) is further hampered by the fact that granting the Motion would "unduly delay or prejudice the adjudication of the original parties' rights." *See* FED. R. CIV. P. 24(b)(3). "Once parties have invested time and effort into settling a case it would be prejudicial to allow intervention." *Ragsdale v. Turnock*, 941 F.2d 501, 504 (7th Cir. 1991) (collecting cases). "A case may never be resolved if another person is allowed to intervene each time the parties approach a resolution of it." *Id.* "Had [DVL] intervened when [it] should have, [it] could have contributed to the settlement process, and quite possibly an agreement . . . could have been reached." *Jones v. Caddo Par. Sch. Bd.*, 735 F.2d 923, 935 (5th Cir. 1984). But "[t]o do so now, after positions have hardened, concessions here have been traded for those" is "plainly recognized" as prejudicial. *Id.* Thus, although *denying* the Motion will not prejudice DVL because it still may object to the settlement, *granting* the Motion would prejudice BIW and Congoleum by allowing DVL to appear at the eleventh hour to disrupt a settlement that the parties have worked hard to broker. Accordingly, DVL cannot meet the standard for permissive intervention under Rule 24(b). And because it cannot meet *any* of the requirements under Rule 24, its Motion should be denied.

**IV. Alternatively, The Court Should Defer Ruling On The Motion Until After The Settlement Hearing.**

24. Even if the Court is not inclined to deny the Motion outright, it should delay ruling on the Motion until *after* the settlement hearing. "In amending Rule 24(a), the Advisory Committee specifically suggested that the intervenor might be subjected to conditions necessary to 'efficient conduct of the proceedings.'" *Ionian Shipping Co. v. British Law Ins. Co.*, 426 F.2d 186, 191-92 (2d Cir. 1970). Even a party who has the right to intervene under Rule 24 does not have the right "to act wholly free of any limitations imposed by the Court in the interests of orderly procedure." *In re Adelphia Comm'ns Corp.*, 285 B.R. 848, 851 (Bankr. S.D.N.Y. 2002); *accord United States v. City of Detroit*, 712 F.3d 925, 932 (6th Cir. 2013) (when ruling on a motion under Rule 24, "courts are not faced with an all-or-nothing choice between grant or denial").

25. Here, permitting DVL to intervene now, while a settlement of this matter is forthcoming, would inject unnecessary delay into this bankruptcy case. It is very likely that any legitimate concerns DVL has with the parties' settlement can be completely resolved through the settlement approval process under Bankruptcy Rule 9019. Thus, it is well within the Court's power to defer ruling on the Motion until after the settlement hearing "in the interests of orderly procedure." *See Adelphia Comm'ns*, 285 B.R. at 851.

## CONCLUSION

For all of the reasons stated herein, BIW respectfully requests that the Court deny DVL's Motion or, in the alternative, defer ruling on the Motion until after a hearing on the settlement between BIW and the Debtor.

Dated:  November 4, 2020

Respectfully submitted,

  */s/    Daniel M. Stolz                     .
Daniel M. Stolz
WASSERMAN, JURISTA & STOLZ
110 Allen Road, Suite 304
Basking Ridge, NJ 07920
(973) 346-7600

Ralph J. Marra
Eric T. Kanefsky
CALCAGNI & KANEFSKY, LLC
1085 Raymond Blvd.
14th Floor
Newark, NJ 07102
(862) 397-1796

Catherine L. Steege (*pro hac vice*)
Michael A. Doornweerd (*pro hac vice*)
Wade A. Thomson (*pro hac vice*)
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
(312) 222-9350

*Attorneys for Plaintiff*
*Bath Iron Works Corporation*