FOR PUBLICATION

<table>
<tr><td>

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-2(c)**

<br><br>

CONGOLEUM CORPORATION,
           Debtor.

<br>

BATH IRON WORKS CORPORATION,

        Plaintiff,

   v.

CONGOLEUM CORPORATION,

        Defendant.

</td><td>

Case No. 20-18488 (MBK)

Adv. Pro. No. 20-01439 (MBK)

Chapter 11

Hearing Date: March 17, 2021

</td></tr>
</table>

## AMENDED MEMORANDUM OPINION[1]

**Daniel Stolz, Esq.**
Genova Burns, LLC
110 Allen Rd.
Suite 304
Basking Ridge, NJ 07920
*Counsel for Plaintiff Bath Iron Works*

**Catherine Steege, Esq.**
**Michael A. Doornweerd, Esq.**
**Wade A Thomson, Esq.**
Jenner & Block, LLP
353 N. Clark Street
Chicago, IL 60654
*Counsel for Plaintiff Bath Iron Works*

**Russell L. Hewit, Esq.**
**Craig A. Domalewski, Esq.**
**Scott A. Hall, Esq.**
Dughi, Hewit & Domalewski, P.C.
340 North Ave.
Cranford, NJ 07016
*Counsel for Defendant Congoleum Corp.*

---

[1] The Opinion is amended for the sole purpose of correcting counsel of record for Debtor-Defendant in the caption. The substance and body of this Opinion were not altered.

This matter comes before the Court on a Motion ("Motion") (ECF No. 58) filed by Plaintiff Bath Iron Works Corporation ("BIW") seeking summary judgment in its favor in the adversary proceeding against Debtor Congoleum Corporation ("Congoleum" or "Debtor"). The adversary proceeding seeks declaratory relief relating to the interpretation of the Confirmation Order entered in 2010 in Congoleum's prior bankruptcy case. The Debtor opposes BIW's Motion. The Court has fully considered the submissions of the parties and the arguments set forth on the record during the hearing held on March 17, 2021. For the reasons set forth below, the Court grants BIW's Motion for summary judgment and issues the requested declaratory relief.

## I.    Background

The factual background and procedural history of this matter are well known to the parties and will not be repeated in detail here. In relevant part, on December 31, 2003, Congoleum along with two affiliates, Congoleum Sales, Inc. and Congoleum Fiscal, Inc., (collectively, "Congoleum" or the "Debtor") filed voluntary petitions for relief in the United States Bankruptcy Court for the District of New Jersey under chapter 11 of the Bankruptcy Code. The cases were jointly administered and captioned *In re Congoleum Corporation*, 03-51524 (KCF) (the "First Congoleum Bankruptcy"). In August 2009, the district court withdrew the reference and assumed authority over the proceedings in Case No. 09-cv-04371 (JAP). On June 7, 2010, the district court entered an order confirming the Debtor's Fourth Amended Joint Plan of Reorganization (ECF No. 664 in Case No. 09-cv-04371) (the "2010 Confirmation Order").

On July 13, 2020, Congoleum filed the pending bankruptcy proceeding (the "Bankruptcy Proceeding") under Case No. 20-18488. Shortly thereafter, on August 6, 2020, BIW filed the

instant Adversary Complaint for Declaratory Judgment and Other Relief (Adv. Pro. No. 20-01439) (the "Adversary Proceeding") seeking a declaratory judgment from this Court with respect the meaning of findings in Paragraph 104 of the district court's 2010 Confirmation Order in the First Congoleum Bankruptcy.  Specifically, by way of this Adversary Proceeding, BIW asks this Court to clarify that the district court's finding in Paragraph 104—which states that BIW has "no responsibility for any of the liabilities of the Congoleum Flooring Business"—means that BIW is not a successor to the Congoleum Flooring Business and is not responsible for any liabilities of the Congoleum Flooring Business, including any environmental liabilities.

Initially, the parties reached a settlement and sought to consensually resolve the Adversary Proceeding by requiring that the Court issue extensive findings and conclusions of law.  On November 19, 2020, the Debtor filed a Motion to Approve Settlement (the "Settlement Motion") in the Bankruptcy Proceeding (ECF No. 483 in Case No. 20-18488).[2]  The requested findings— each of which was a condition to settlement—are set forth in a fifteen-page attachment to the Settlement Motion (*"Exhibit 1" in Exhibit A to Motion to Approve Settlement,* Case No. 20-18488, ECF No. 483-3 at 12-27).[3]  Several non-parties to the litigation objected to the Settlement Motion, including: DVL, Inc. and DVL Kearny Holdings, LLC (collectively "DVL"), Occidental Chemical Corporation ("Occidental"), Ashland LLC, and Giavudan Fragrances.  In contrast, the Unsecured Creditors Committee supported the Settlement Motion in all respects.  The Court held an evidentiary hearing on December 30, 2020, during which the Court heard testimony and oral argument.  In an Opinion and Order entered on January 4, 2021 (ECF Nos. 619 & 620, respectively,

---

[2] The Settlement Motion was also filed in the Adversary Proceeding at ECF No. 22.
[3] The requested findings were also filed in the Adversary Proceeding at ECF No. 22-2, pages 12-27.

in Case No. 20-18488)[4], the Court declined to approve the settlement and declined to issue partial findings because to do risked issuance of an inappropriate advisory opinion. *See, e.g.*, *In re Cubic Energy, Inc.*, 587 B.R. 848 (D. Del. 2018) (holding that a ruling that has no binding effect or does not resolve the pending adversary litigation is would be little more than an inappropriate advisory opinion); *see also, Coffin v. Malvern Fed. Sav. Bank*, 90 F.3d 851 (3d Cir. 1996); *Step–Saver Data Systems, Inc. v. Wyse Technology*, 912 F.2d 643 (3rd Cir. 1990).   Although this Court found that the unique circumstances of this case presented a procedural and substantive roadblock to partial findings in response to a Settlement Motion in the main Bankruptcy Proceeding, the Court determined that it could, nevertheless, issue findings, if warranted, as part of a ruling on any dispositive motion brought before the Court in the pending Adversary Proceeding.  As a result, BIW filed a motion for summary judgment in the Adversary Proceeding.  The Court notes that the declaratory rulings sought in the instant motion are far more limited in scope than what was requested by way of the Settlement Motion.  Accordingly, the Court established a briefing schedule, setting the matter for a hearing on March 17, 2021.

---

[4] The Opinion and Order were also docketed in the Adversary Proceeding at ECF No. 50 and 51, respectively.

II.    **Discussion**

**A.  Paragraph 104 and Related Litigation**

The Court notes that the finding by the District Court in Paragraph 104 of the 2010 Confirmation Order was required by the terms of a prior settlement and buyback agreement reached in 2006, during the First Congoleum Bankruptcy, between Congoleum and Century Indemnity Co. of N.A. ("Century").  Century had issued several excess insurance policies between 1965- 1986 for liabilities, including asbestos and non-asbestos claims.  The settlement and buyback agreement (the "Century Settlement") provided for a $16.5 million sale of the excess insurance policies back to Century, free and clear and subject to a release of all past, present and future claims under the policies, including claims of additional insureds such as BIW.

The issue as to the intent, meaning and enforceability of Paragraph 104 arises from pending environmental litigation involving the Debtor, BIW, DVL and Occidental.  Pertinently, on June 12, 2017, DVL commenced litigation in the District of New Jersey against the Debtor and BIW, captioned *DVL, Inc. & DVL Kearny Holdings, LLC v. Congoleum Corp. and Bath Iron Works Corp.*, Case No. 17-cv-04261 (KM-JBC) (the "DVL Lawsuit").  In the DVL Lawsuit, DVL seeks damages against the Debtor and others for over $19 million as a result of the need to remediate environmental contamination on property located in Kearny, New Jersey (the "Kearny Property") that was previously owned by the Debtor and BIW.  In that proceeding, DVL asserts causes of action under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 *et. seq.*, ("CERCLA") and the New Jersey Spill Compensation and Control Act (the "Spill Act"), as well as under New Jersey common law for public nuisance, negligence, strict

liability/abnormally dangerous activity and unjust enrichment.  Initially, DVL sued only the Debtor; however, the Debtor impleaded BIW as a third-party defendant on theories of successor liability, and DVL amended its complaint to include BIW as a direct defendant.  In the DVL Lawsuit, BIW contends, among other arguments, that DVL's claims against BIW are barred by res judicata, because the 2010 Confirmation Order in the First Congoleum Bankruptcy precludes liability against BIW.

Also presently pending in the district court is a case captioned *Occidental Chemical Corp. v. 21st Century Fox America, et al.*, Case No. 18-cv-11273 (MCA-JAD) brought by Occidental against over 100 defendants, including BIW (the "Occidental Lawsuit").  In that action, Occidental seeks to recover costs that it alleges it has and will continue to incur as a result of the United States Environmental Protection Agency ("EPA") identification of Occidental as the primary responsible party for alleged migration of discharged contaminants from various defendants' properties to a site referred to as the Lower Passaic River, requiring remediation of sediments in the river. Occidental seeks to apportion that liability among numerous parties for alleged environmental contamination.  On September 24, 2019, BIW filed a third-party complaint in the Occidental Lawsuit against the Debtor. The Debtor's and BIW's successorship dispute arose just as it had in the DVL Lawsuit, with BIW and the Debtor eventually entering into a stipulation that "[r]esolution of the corporate successorship issues and claims between BIW and Congoleum in the underlying DVL Lawsuit will also resolve the corporate successorship issues and claims between BIW and Congoleum in [the Occidental Lawsuit]." ECF No. 936-1 in Case No. 18-cv-11273.  The parties

agreed to stay the proceedings between BIW and the Debtor in the Occidental Lawsuit pending the outcome of the DVL Lawsuit.

### B. Debtor's Position

Throughout various legal proceedings, the Debtor has consistently asserted that BIW is responsible for the environmental liabilities based on a series of corporate restructurings in 1986 (the "1986 Transactions"), wherein the Debtor's and BIW's common corporate parent, Congoleum Industries, Inc. underwent a multi-tiered internal restructuring followed by separate sales (by merger). In the instant Adversary Proceeding, the Debtor asserts that issues of fact remain which preclude a summary judgment ruling. At its core, the Debtor's position is that the Kearny Property was not an asset of the "Resilient Flooring Division" or the "Congoleum Flooring Business" and, thus, was not transferred to the Debtor as part of the 1986 Transactions. The Debtor additionally asserts that it "could not and did not sell or release any rights to insurance coverage that it did not own." ECF No. 62 at 9. Accordingly, the Debtor contends that the Kearny Property and its associated liabilities were retained by BIW.[5]

### C. BIW's Position

BIW asserts that the text of Paragraph 104 of the Confirmation Order is clear and unambiguous. Based on the plain language, BIW contends that it has "no responsibility for every type of liability that might arise related to the Congoleum Flooring Business[,] including environmental liabilities." ECF No. 58-2 at 15. BIW argues that this interpretation is supported

---

[5] The Debtor also raises issues related to a fire that occurred on the Kearny Property. These arguments have no impact on this Court's ruling in this Adversary Proceeding, which seeks interpretation of Paragraph 104 of the 2010 Confirmation Order. Therefore, these arguments will not be addressed.

by the context surrounding the 2010 Confirmation Order and BIW describes the factual circumstances that existed at the time of the Century Settlement and the conditions imposed as prerequisites to the insurance policy buyback.  BIW contends that the issues raised in this Adversary Proceeding have already been addressed on their merits in the First Congoleum Bankruptcy and, as a result, Congoleum is bound by those findings.  BIW additionally invokes the doctrines of res judicata, judicial estoppel, and collateral estoppel, which—BIW argues—preclude a ruling inconsistent with BIW's position.

### D.  Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  As the Supreme Court has indicated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986) (citing FED. R. CIV. P. 1).  "In deciding a motion for summary judgment, the judge's function is to determine if there is a genuine issue for trial." *Josey v. John R. Hollingsworth Corp.,* 996 F.2d 632, 637 (3d Cir. 1993).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Huang v. BP Amoco Corp.,* 271 F.3d 560, 564 (3d Cir. 2001) (citing *Celotex Corp.,* 477 U.S. at 323, 106 S. Ct. 2548).  In determining whether a factual dispute warranting trial exists, the court must view the record evidence and the summary judgment

submissions in the light most favorable to the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).  Disputed material facts are those "that might affect the outcome of the suit under the governing law." *Id.* at 248, 106 S. Ct. 2505. A dispute is genuine when it is "triable," that is, when reasonable minds could disagree on the result. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted).

"Once the moving party establishes the absence of a genuine dispute of material fact, however, the burden shifts to the non-moving party to 'do more than simply show that there is some metaphysical doubt as to the material facts.'" *In re Moran-Hernandez*, 544 B.R. 796, 800 (Bankr. D.N.J. 2016) (quoting *Matsushita,* 475 U.S. at 586, 106 S. Ct. 1348).  A party may not defeat a motion for summary judgment unless it sets forth specific facts, in a form that "would be admissible in evidence," establishing the existence of a genuine dispute of material fact for trial. Fed. R. Civ. P. 56(e) (providing that in response to a summary judgment motion the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine [dispute] for trial"). *See also Fireman's Ins. Co. of Newark, N.J. v. DuFresne,* 676 F.2d 965, 969 (3d Cir. 1982); *Olympic Junior, Inc. v. David Crystal, Inc.,* 463 F.2d 1141, 1146 (3d Cir. 1972).  If the nonmoving party's evidence is a mere scintilla or is not "significantly probative," the court may grant summary judgment. *Liberty Lobby, Inc., supra,* 477 U.S. at 249–250, 106 S. Ct. 2505.  "Where the record taken as a whole could not lead a rational trier of fact to

find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587, 106 S. Ct. 1348.

### E. Analysis

The Debtor frames the outcome of this case on the meaning and scope of the term "Congoleum Flooring Business." Congoleum alleges that a material dispute of fact exists as to this term, which precludes summary judgment. Indeed, in this Adversary Proceeding the parties disagree as to exactly what the "Congoleum Flooring Business" encompasses and—as a corollary—what was transferred to the Debtor as a result of the 1986 Transactions, what insurance policies were sold as a result of the Century Settlement, and what liabilities and coverages were retained by BIW. Thus, at first blush, it appears that a material dispute of fact exists. However, this Court is not being asked to make these determinations anew. Rather, as set forth in this Court's prior Opinion (ECF No. 619 in Case No. 20-18488) and as discussed with the parties on the record in various proceedings, this Court is being asked by way of this Adversary Proceeding solely to interpret the 2010 Confirmation Order and effectuate the intent of Judges Pisano and Ferguson in reaching their respective determinations.[6] Therefore, the parties' present understanding of the

---

[6] Earlier in this litigation, a question was raised as to the propriety of this Court interpreting orders issued by other judges. Although that argument appears to have been abandoned, this Court will nevertheless provide the following analysis: Admittedly, the orders at issue in this case were entered by other judges; Judge Ferguson having approved the Century Settlement, and Judge Pisano having entered the 2010 Confirmation Order. However, under the circumstances of this case it is both appropriate and within this Court's authority to interpret an order issued by another judge. *See, e.g.*, *See Alley v. U.S. Dep't of Health & Human Servs.*, 590 F.3d 1195, 1202 (11th Cir. 2009) (observing that—due to the passage of time—a new judge may be asked to interpret an order issued many years before by a different judge.); *see also In re China Peak Resort*, 76 B.R. 757, 759 (B.A.P. 9th Cir. 1987), *aff'd and remanded,* 847 F.2d 570 (9th Cir. 1988), *vacated sub nom. California State Bd. of Equalization v. Sierra Summit, Inc.*, 490 U.S. 844, 109 S. Ct. 2228, 104 L. Ed. 2d 910 (1989) (discussing factors to be considered when determining which court should make the interpretation including, but not limited to: efficiency; consistency or accuracy in the interpretation; and responsibility of the issuing court); *Garcia v. Chrysler Grp. LLC*, No. 12-1797, 2015 WL 12857080, at *4 (D.N.J. Mar. 9, 2015).

"Congoleum Flooring Business" is immaterial to this Court's analysis.  Instead, this Court must look to the record that existed at the time of the Century Settlement and the 2010 Confirmation Order.  There exists no factual dispute as to what was before Judge Ferguson at the time the bankruptcy court approved the Century Settlement or what was before Judge Pisano at the time the district court entered the 2010 Confirmation Order.  As a result, no issue of material fact precludes summary judgment of the Adversary Proceeding before this Court.

Furthermore, it is not for this Court to pass judgment on the rulings in the First Congoleum Bankruptcy.  This Court is not reviewing either the approval of the Century Settlement or entry of the 2010 Confirmation Order to determine whether it was prudent to issue those rulings, or whether they were correct based on the information presented to the respective judges.  This Court's role in this Adversary Proceeding is limited to discerning what insurance policies and rights Judges Pisano and Ferguson understood were to be sold and released in the Century Settlement, as incorporated in the 2010 Confirmation Order.  To make these findings, this Court looks to the parties' oral arguments, pleadings, and any other submissions which supported the decisions in the First Congoleum Bankruptcy.  The Court concludes that by entering into the Century Settlement, and by incorporating Paragraph 104 into the 2010 Confirmation Order, the Debtor assumed *all* liability for *all* claims, including those environmental claims stemming from the Kearny Property. This conclusion is supported by the factual record as well as public policy considerations.

    **1.** **The Record Before the Court at the time of the Century Settlement and 2010 Confirmation Order**

The record indicates that all parties—including the Court—believed and understood that all business undertaken at the Kearny Property was part of the "Congoleum Flooring Business,"

which was transferred to the Debtor as a result of the 1986 Transactions.  The Debtor's current

contention that the Kearny Property was excluded from these transactions and was not part of the

"Congoleum Flooring Business" is contradicted by the Debtor's own representations in the First

Congoleum Bankruptcy.  Specifically, in the Motion to Approve the Century Settlement, the

Debtor included and referenced as an exhibit the proposed settlement agreement. *Exhibit A to*

*Debtor's Motion to Approve Settlement (Settlement and Buy Back Agreement)*, Case No. 03-51524,

ECF No. 4439-2.   This document, which ultimately was approved as the Century Settlement,

defines "Congoleum Flooring Business" in Paragraph L and indicates that it is the business entity

that "was headquartered continuously in Kearny, New Jersey, from before 1965 to 1987." *Id.* at 7.

Furthermore, Congoleum repeatedly represented—through submissions and testimony—that it

was the successor to the entity known as Congoleum-Nairn, Inc., which operated at the Kearny

property from 1924 through 1968. *See e.g.*, *Id.* at 6, ¶ K; *Exhibit B to Debtor's Motion to Approve*

*Settlement (Feist Declaration)*, Case No. 03-51524, ECF No. 4439-3.  The record further reflects

that Congoleum-Nairn was the entity that was conscripted by the government to make wartime

products during World War II.  Thus, to the extent the Debtor contends that the Congoleum

Flooring Business could not have included the activities of the Kearny Property facility during

World War II, this argument has been rebutted by the uncontroverted evidence in the record and

no factual issue remains.

There is nothing in the record to indicate that the parties distinguished between the

Congoleum Flooring Business transferred to the Debtor and the alleged assets and liabilities of the

flooring business retained by BIW.  To the contrary, the Debtor consistently represented that it

was the sole successor to the entire flooring business. *See, e.g.*, *Transcript of Hearing on Motion to Approve Century Settlement*, Sept. 11, 2006, Case No. 03-51524, ECF No. 4568 at 51:3-8 ("After a great deal of due diligence there is no question in my client's mind that we are the successor, the company that is now called Congoleum is the successor to all of the flooring businesses that had been run by predecessors. We've given that representation to Century in this agreement, and we've told other people, anybody who could have been a predecessor."). The Court will not belabor the point. In short, the Debtor points to no documentation or arguments that were placed before the Court at the time of the Century Settlement which would have suggested to the Court or to other interested parties that the Kearny Property was *not* part of the Congoleum Flooring Business, or that BIW was retaining liability relating to any aspect of the flooring business. To the contrary, all evidence in the record at the time leads to the reasonable conclusion that the Kearny Property, in fact, was transferred to the Debtor as a result of the 1986 Transactions.

Further, it is clear from the record that the parties contemplated the sale of all insurance policies, not just the asbestos-related policies. The record before Judge Ferguson at the time she approved the Century Settlement confirms that the parties negotiated for a buyback of *all* coverage—not just asbestos coverage—in reaching the Century Settlement. In the Motion to Approve the Century Settlement the Debtor noted that

> As a condition of the Settlement and Buyback Agreement, Century, on behalf of the Century Entities, will pay the Settlement and Buyback Amount only if they can have certainty that the Century Entities will be released fully from, and have injunctive protection against, all Claims, *including non-asbestos claims*, that may be based on, or derive from, the Subject Policies.

*Application in Support of Motion to Approve Century Settlement*, Case No. 03-51524, ECF No. 4439-1 at ¶ 52 (emphasis in original).  The representation that the buyback included non-asbestos claims was further advanced through the testimony of interested parties, including Congoleum's then-CFO, Howard N. Feist, III, and a representative on behalf of Century.  *See Exhibit B to Debtor's Motion to Approve Century Settlement (Feist Declaration)*, Case No. 03-51524, ECF No. 4439-3; *Declaration of Maria Thompson*, Case No. 03-51524, ECF No. 4446 at ¶7.

Additionally, the issue of whether the Century Settlement could or should include non-asbestos coverages was litigated before the Bankruptcy Court in the First Congoleum Bankruptcy. Certain parties objected to the Debtor's Motion to Approve the Century Settlement and argued that non-asbestos coverage should not be included in the sale. *See, e.g.*, *Transcript of Hearing on Motion to Approve Century Settlement*, Sept. 11, 2006, Case No. 03-51524, ECF No. 4568 at 41:1 ("[The Century Settlement] cannot address nonasbestos liability, period.").  In response to these objections, the Debtor "doubled-down" on its representation that it sought to sell both asbestos and non-asbestos coverages. *See, e.g.*, *Id.* at 52:4-6 ("So Your Honor, what's being sought is non, is a sale of the, of nonasbestos coverages, as well as asbestos coverages here for flooring business claims."); *Id.* at 53:8-14 ("They're long latency claims, essentially environmental claims, long latency pollution claims, that sort of ilk, and Century paid us for that as well as, as well as for the asbestos claims. They wanted a complete policy buy back of all their liabilities, which I think it is within their right to bargain for and our right to grant.").

14

Finally, the Debtor represented to the district court that both asbestos and non-asbestos coverage was included in the Century Settlement. *See, e.g.*, *Declaration of Howard N. Feist, III*, Case No. 09-cv-04371 (JAP), ECF No. 625 at ¶ 72. ("The settling insurers with policies that covered non-asbestos claims indicated that they would not buy back their respective policies or pay any settlement amounts unless they received a full release for their non-asbestos claims, as well as their asbestos claims."). Accordingly, the incontrovertible and unambiguous record before the Court when Judge Ferguson approved the Century Settlement and when Judge Pisano entered the 2010 Confirmation Order unequivocally settles that the sale included insurance policies for both asbestos and non-asbestos liabilities. The Debtor has presented no evidence to the contrary which creates a triable issue of fact.

Based on the foregoing, this Court agrees with BIW's interpretation of Paragraph 104 of the 2010 Confirmation Order. The Court holds that the finding contained in Paragraph 104, which states that BIW has no responsibility for any of the liabilities of the Congoleum Flooring Business, covers *all* liabilities, including environmental liabilities associated with the Kearny Property. It is difficult to conceive of how this could *not* have been the Courts'—and the parties'—understanding and intent at the time the Orders in question were entered. Judges Pisano and Ferguson had an obligation under settled law to adequately protect the interests of BIW and the other additional named insureds under the Century policies, and to ensure that these interest-holders were treated fairly in the First Congoleum Bankruptcy. *See e.g.*, 11 U.S.C. § 363(e); *In re Roman Cath. Bishop of Stockton*, No. 14-20371, 2017 WL 118013 (Bankr. E.D. Cal. Jan. 10, 2017); *In re Scimeca Found., Inc.*, 497 B.R. 753 (Bankr. E.D. Pa. 2013) (holding that a party with an interest in estate

15

property to be sold must be adequately protected when trustee sells property out of ordinary course of debtor's business).  Judge Ferguson would not have—and could not have—approved a sale that stripped BIW of its right to coverage without ensuring that BIW received suitable compensation. *See, e.g.*, *In re SportStuff, Inc.*, 430 B.R. 170, 179 (B.A.P. 8th Cir. 2010) (reversing bankruptcy court's approval of settlement with insurance carrier as not "fair and reasonable," in part, because additional insureds did not consent or receive adequate compensation).  If, as the Debtor now argues, BIW was not being relieved of *all* liability of the Congoleum Flooring Business, then it is unclear what benefit BIW received as a result of the Century Settlement.  Indeed, this Court made this inquiry to Debtor during oral argument on March 17, 2021.  The Debtor failed to provide an adequate response.

Further, during oral argument, counsel for the Debtor attempted to explain why the assets of "Congoleum Flooring Business" that were transferred to the Debtor in the 1986 Transactions were limited and, thus, did not include the Kearny Property and its associated liabilities.   When the Court inquired as to how Judge Ferguson could be charged with this knowledge if it was not part of the record at the time, the Debtor again did not have a response.  Instead, the Debtor focused on its and BIW's subjective understanding of what was transferred and what was retained in the 1986 Transaction.  As an initial matter, and as noted by the Court during oral argument, at issue is the scope of insurance coverage bought back by Century, not the identification of assets sold to BIW.  For the most part, buildings do not pollute rivers.  Rather, harmful discharges occur through improper business activities.  As the Debtor confirmed to Judge Ferguson, the Century Settlement

16

provided for Century to buy back all of its non-asbestos coverages for the flooring business claims.

There was no reference at all to limitations based upon title to real estate or physical assets.

Moreover, BIW disputes the Debtor's assertion that BIW was aware it retained certain

liabilities of the flooring business.  To the contrary, BIW asserts that, had it believed that it was

receiving only limited liability protection, it would have objected to the Century Settlement.  As

set forth above, the record supports BIW's position.  Thus, to the extent the Debtor means to argue

that BIW impliedly consented to a settlement which did not provide full relief from liability, this

argument fails.

The Court further reiterates that it is not concerned with the parties' present subjective

understandings.  Rather, the focus is on the scope, meaning, and intent of the Century Settlement

and Paragraph 104 of the 2010 Confirmation Order at the time those instruments were approved

and entered by the Court.  Given the circumstances of this case and the evidence before the Court

at the time, there is no factual dispute as to the meaning of those documents and the language

contained therein.  The Debtor's present allegations of what was understood by the parties, but not

available on the record to the Court, is insufficient to establish the existence of a material issue of

fact and defeat summary judgment. *See Matsushita,* 475 U.S. at 587, 106 S. Ct. 1348.

## 2.  Policy Considerations

The Court's conclusion is likewise buttressed by significant policy considerations.  At the

time of the Century Settlement, the parties engaged in extensive negotiations.  The record clearly

establishes that the insurers sought "certainty" that they were relieved of all coverage liability, including non-asbestos claims. *See, e.g.*, *Application in Support of Motion to Approve Century Settlement*, Case No. 03-51524, ECF No. 4439-1 at ¶ 52; *Declaration of Howard N. Feist, III*, Case No. 09-cv-04371 (JAP), ECF No. 625 at ¶ 72 ("The settling insurers with policies that covered non-asbestos claims indicated that they would not buy back their respective policies or pay any settlement amounts unless they received a full release for their non-asbestos claims, as well as their asbestos claims."); *Application in Support of Motion to Approve Century Settlement*, Case No. 03-51524, ECF No. 4439-1 at ¶ 52 ("As a condition of the Settlement and Buyback Agreement, Century, on behalf of the Century Entities, will pay the Settlement and Buyback Amount *only if they can have certainty that the Century Entities will be released* fully from, and have injunctive protection against, all Claims, *including non-asbestos claims*, that may be based on, or derive from, the Subject Policies.") (first emphasis added) (second emphasis in original). These issues were litigated before Judge Ferguson, with the Debtor arguing in favor of a broad release of all types of claims. *See, e.g.*, *Transcript of Hearing on Motion to Approve Century Settlement*, Sept. 11, 2006, Case No. 03-51524, ECF No. 4568 at 52:4-6; 53:8-14. The insurance carriers provided significant consideration to the bankruptcy estate in exchange for the ability to buy back the policies in the Century Settlement. Likewise, in exchange for release of coverage resulting from the Century Settlement, BIW and similarly situated additional insureds were promised certainty as to future liability for any claims arising from the Debtor's flooring business. To further protect its interest and the interests of the additional insureds, Century negotiated to have the essence of the Century Settlement memorialized in a finding in the 2010 Confirmation Order. Despite this history, and

despite the expansive language in the Century Settlement and the 2010 Confirmation Order, the Debtor now suggests that BIW is still liable for—and the insurers are still on the hook for—certain liabilities associated with the flooring business.  To accept the Debtor's position would prove problematic in this case and beyond.

With respect to this case, the Court holds that the Debtor cannot hide behind a series of complex corporate restructurings to avoid liability.  Indeed, the notion that BIW retained liability and that the insurers are still obligated to provide coverage is news to everyone but the Debtor. The Debtor took a defined position at the time of the Century Settlement and the 2010 Confirmation Order, which benefited the bankruptcy estate as a whole, and improved the Debtor's chances at a successful reorganization.  The Debtor cannot now take a contrary position, which better serves its current interests. *See, e.g.*, *In re Price*, 361 B.R. 68, 79 (Bankr. D.N.J. 2007) (collecting cases and discussing quasi-estoppel, which has its basis in equity and precludes a party from asserting, to another's prejudice, a position that is inconsistent with a previously-held position).  The record in this case—as established by the Debtor's own submissions—is clear that the insurers negotiated strongly for "certainty" in the Century Settlement. *See, e.g.*, *Declaration of Howard N. Feist, III*, Case No. 09-cv-04371 (JAP), ECF No. 625 at ¶ 72.  This Court must provide such certainty by accepting BIW's interpretation of the Century Settlement and the 2010 Confirmation Order.

On a larger scale, acceptance of the Debtor's position would put an asterisk on all future settlements with insurers.  The sale of assets—such as insurance policies—through bankruptcy court sales and confirmation orders facilitates successful reorganizations by bringing an immediate

19

injection of necessary funds into the estate and avoiding costly litigation.  This is especially true

in asbestos cases and other mass tort cases.  The benefit to insurance carriers by entering into

settlement agreements involving the sale of insurance policies is that they are relieved of their

obligation to provide coverage.  If, after settling with debtors, insurance providers face a

continuing threat that they may be called back to provide coverage to additional insureds,[7] it will

discourage carriers from entering into settlements with debtors in the first instance.  This Court

will not adopt a policy that jeopardizes future settlements by permitting the debtor or third parties

to revisit, years later, the terms of an insurance buy back approved under 11 U.S.C. § 363(b) and

(f).

---

[7] Much like Michael Corleone in The Godfather III. THE GODFATHER III (Paramount Pictures 1990) ("Just when I thought I was out… they pull me back in!").

### III.    Conclusion

For the reasons set forth above, the Court finds that the Century Settlement sold the policies free and clear and subject to a release of all past, present and future claims—both asbestos and non-asbestos—including claims of additional insureds such as BIW. Paragraph 104 of the 2010 Confirmation Order further memorializes that BIW has no liability for any claims—asbestos and non-asbestos—stemming from the Congoleum Flooring Business, which includes all activities at the Kearny Property.  Accordingly, the Court GRANTS summary judgment in favor of BIW.  The Court will enter a form of Order consistent with this Opinion.



Michael B. Kaplan, Chief Judge
U.S. Bankruptcy Court
District of New Jersey

Dated: April 16, 2021